## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JEFFREY KATHMAN, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | |
| v. | : : : | **COMPLAINT – CLASS ACTION** |
| FONBUENA LAW FIRM CHTD, a Nevada chartered entity, | : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : | |
| _____/ | | |

## CLASS ACTION COMPLAINT

Plaintiff Jeffrey Kathman ("Plaintiff" or "Kathman") brings this Class Action Complaint and Demand for Jury Trial against Fonbuena Law Firm CHTD doing business as Timeshare Defense Attorneys ("Defendant" or "Timeshare Defense Attorneys") to stop the Defendant from violating the Telephone Consumer Protection Act by making pre-recorded telemarketing calls to consumers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Kathman, for this Complaint, alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, as follows:

## PARTIES

1.      Plaintiff Kathman is, and at all times relevant to this action was, a Parrish, Florida resident.

2.      Defendant Timeshare Defense Attorneys is a Nevada chartered entity headquartered in Las Vegas, Nevada. Defendant Timeshare Defense Attorneys conducts business throughout this District, Florida, and the US.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.      This Court has personal jurisdiction over the Defendant and the venue is proper under 28 U.S.C. § 1391(b) because the Defendant conducts business in this District, and the calls at issue were received by the Plaintiff while residing in this District.

## INTRODUCTION

5.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant

barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.      When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7.      By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10.      According to online robocall tracking service "YouMail," 4.6 billion robocalls were placed in October 2022 alone, at a rate of 147.5 million calls per day. www.robocallindex.com (last visited November 27, 2022).

11.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14.     Defendant Timeshare Defense Attorneys provides timeshare cancellation services to its customers.[3]

15.     Defendant Timeshare Defense Attorneys places telemarketing cold calls to its prospective customers, as per Plaintiff's experience and a review that was posted online from a former Timeshare Defense Attorneys employee:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.linkedin.com/company/timeshare-defense-attorneys/about/

### Good if you have no other option

On boarding clients specialist (Former Employee) - Scottsdale, AZ - March 1, 2021

They will promise the moon , if you are ok being cursed out multiple times by people being cold called 100+ a month and few leads on top then this is the right opportunity for you . You will never advance , and average monthly earning is 2-3 k a month. Don't make them fool you .

✓ **Pros**
Work-life balance

✗ **Cons**
Pay plan sucks                                                                                    4

16.     Defendant  Timeshare  Defense  Attorneys  places  pre-recorded telemarketing calls to solicit its services to consumers, either on its own or using the services  of  a  third-party,  despite  having  never  obtained  the  necessary  consent  to place the calls.

17.     Defendant Timeshare Defense Attorneys places these calls either using its own technology, or that of a third-party marketing company using pre-recorded agents that are able to provide limited interactions with consumers as if they are live agents, as per Plaintiff's experience.

18.     Youmail.com, a website consumers use to report telemarketing calls captured 2 different pre-recorded calls from Defendant to Youmail.com consumers using 2 different phone numbers:

Based on a call a consumer received from 580-238-5060:

---

[4] https://www.indeed.com/cmp/Timeshare-Defense-Attorneys/reviews

## Typical Messages

Great now I'm with timeshare defense attorneys and you can press one to be removed and I show that you may qualify to cancel your time share which will eliminate your mortgage and maintenance fee payments. Do you still own a Time share.



Based on a call a consumer received from 530-576-8885:

## Typical Messages

Great now I'm with timeshare defense attorneys and you can press one to be removed and I show that you may qualify to cancel your time share which will eliminate your mortgage and maintenance fee payments. Do you still own a Time share.



19.     The aforementioned pre-recorded messages captured by Youmail.com are shown to be pre-recorded because:

- Both of the messages are identical;

- Both of the messages indicate that the consumer can press '1' to be removed, presumably from future calls;

- Both of the messages begin part of the way through a scripted conversation; and

- Both of the messages contain a robotic "bleep" sound after explaining the purpose of the call and both of the messages disconnect immediately after the automated agent asked, "Do you still own a timeshare?"

6

20.     Whether Defendant Timeshare Defenses Attorneys is placing pre-recorded calls to consumers, or using a third-party to place such calls, Defendant has been made sufficiently aware that unsolicited, unlawful pre-recorded telemarketing calls are being placed on its behalf.

21.     Consumers have posted numerous complaints online directly to Defendant Timeshare Defense Attorneys regarding unsolicited calls they received from Defendant, even going so far as to mention that the calls are being placed despite requests for them to stop, including:

Directly through Google.com:

- "Constant bombardment robocalls even after asking to be removed from list. I need to follow up an attorney to see if there is action that can be taken against companies that **continue to call after you ask multiple time to be removed**."[5] (emphasis added)
- "They use a robocall service. I am on the national do-not call registry and I **can't get them to stop calling me**."[6] (emphasis added)
- "I get non-stop robocalls from this company. **I have told them to stop calling me but they keep calling me.** It's getting out of control"[7] (emphasis added)
- "Harassing phone calls daily, scam artists, phishing, should be ashamed to call themselves attorneys"[8]

Directly through the Better Business Bureau:

- "Wow, so I see I am not the only one they are lying to. Their calls constitute HARASSMENT!! My mother passed away two years ago.

---

[5] https://www.google.com/search?q=%22timeshare+defense+attorneys
[6] *Id.*
[7] *Id.*
[8] *Id.*

Yet they still call constantly about her time share. **Asking them to stop does nothing.** Telling them she is deceased does nothing. I find it hilarious that they say they only call people who have opted in. When they called me yesterday (from a spoofed number to make it look like a local call), the girl had the nerve to tell me that this was the first time they had called me. So who opted in? I certainly didn't. I'm certain my mother didn't because she hated the entire Time Share Cancellation Industrial Complex. But even if she had, it would have been many, many years ago. I've been begging them to stop calling me for years.For the love of God, stop calling me!!!!"[9] (emphasis added)

- "Timeshare Defense Attorneys violated TCPA Fed Law 227(b) and 227(c) as my cell has been on the Do Not Call List since 2010 & I did not give the company or their marketing company prior written consent to call me. I received a phone from ***********. This person connected me with Timesharedefenseattorney.com. I requested the name of the company calling but they refused to tell me their name. The operator at Timesharedefenseattorey.com could not tell me name of the company that had called me. As I have read prior responses to complaints I will say I have never consented to receiving phone calls from this company. I do not own a timeshare."[10]

- "This company, Time Share Defense Attorneys, continues to call me about ending a timeshare. I have not had a time share for 20 years. I also am on the do not call registry. They call multiple times in a day. **When I try to question the caller and try to be taken off their data files, the person hung up on me.** So I am filing a complaint with the *** registry and also with BBB."[11] (emphasis added)

22.     The aforementioned complaints were all directed to Defendant Timeshare Defense Attorneys directly and in most cases, Defendant acknowledged the complaints.

---

[9] https://www.bbb.org/us/ut/west-jordan/profile/lawyers/timeshare-defense-attorneys-1166-90026816/complaints

[10] *Id.*

[11] *Id.*

23.     In addition, consumers have posted complaints on call complaint web forums regarding unsolicited pre-recorded calls that they received from Defendant Timeshare Defense Attorneys, including:

- "Robo call from Timeshare Defense Attorneys."[12]

- "Robocall redirects to Timeshare Defense Attorneys in Nevada"[13]

24.     The Federal Communication Commission has instructed that corporations such as Defendant Timeshare Defense Attorneys may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

---

[12] https://800notes.com/Phone.aspx/1-757-732-0417
[13] https://www.telguarder.com/us/number/18506790832

25.     In response to these calls, Plaintiff Kathman files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF KATHMAN'S ALLEGATIONS

26.     Plaintiff Kathman is the subscriber of the cell phone number ending in 3211.

27.     Plaintiff Kathman registered his cell phone number on the Do Not Call registry on April 4, 2014.

28.     Plaintiff Kathman uses his cell phone for personal use only. It is not used as a business number.

29.     Plaintiff Kathman has received multiple pre-recorded calls from or on behalf of Defendant Timeshare Defense Attorneys using a multitude of spoofed phone numbers that could not be called back.

30.     Plaintiff Kathman could tell that the calls were pre-recorded using an automated agent because the calls always followed the exact same script, with the exact same agent, in the same tone. In addition, the agent would always indicate that Plaintiff could opt-out by pressing a button. When the button would be pressed, the call would disconnect. If the Plaintiff would say anything the automated agent would

not be programmed for, the call would also automatically disconnect.

31.   Plaintiff Kathman has never owned a timeshare and has never had the need to sell or terminate a timeshare agreement.

32.   When Plaintiff Kathman received unsolicited pre-recorded calls from or on behalf of Defendant Timeshare Defense Attorneys, he would press '1' to opt out from receiving additional calls.

33.   Despite his numerous attempts to stop the calls, Defendant Timeshare Defense Attorneys or a third-party working on its behalf continued to place unsolicited pre-recorded calls to Plaintiff's cell phone.

34.   On November 15, 2022 at 11:21 AM, Plaintiff Kathman received an unsolicited pre-recorded call from or on behalf of Defendant Timeshare Defense Attorneys, from phone number 727-301-1215.

35.   Frustrated by all the unsolicited calls he had already received, Plaintiff interacted with the automated agent in order to get to a live employee to identify the caller and stop the calls.

36.   After answering a few qualifying questions, Plaintiff was transferred to a live employee. When this employee did not volunteer a company name, Plaintiff asked which company he was dealing with. The employee said that they work for Timeshare Defense Attorneys out of Nevada.

37.    Plaintiff Kathman has never had any business relationship with Defendant Timeshare Defense Attorneys.

38.    The unauthorized prerecorded calls that Plaintiff Kathman received from Defendant Timeshare Defense Attorneys has harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery), the consumption of memory on the phone.

39.    Seeking redress for these injuries, Plaintiff Kathman, on behalf of himself and  Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ACTION ALLEGATIONS

40.    Plaintiff Kathman brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant, or an agent calling on behalf of the Defendant, called on their cellular telephone number (2) using the same or a substantially similar artificial or pre-recorded voice message used to call the Plaintiff.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time, (2) within any 12-month period, (3) where the person's residential phone number had been listed on the National Do Not Call Registry for at least thirty days.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called more than one time on their residential number, (2) within any 12-month period, (3) including at least once after the person requested that Defendant stop calling.

41.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Kathman anticipates the need to amend the Class definitions following appropriate discovery.

42.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

43.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

Common questions for the Classes include, but are not necessarily limited to the following:

(a)     Whether Defendant placed pre-recorded voice calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b)     Whether Defendant placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(c)     Whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether Defendant's conduct violated the TCPA; and

(e)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

44.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to the Plaintiff. The Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the

members of the Classes and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Classes.

45.     **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Kathman. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**On Behalf of Plaintiff Kathman and the Pre-recorded No Consent Class**

46.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

47.    Defendant Timeshare Defense Attorneys and/or its agents transmitted unwanted telephone calls to Plaintiff and the other members of the Pre-recorded No Consent Class using pre-recorded calls.

48.    These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

49.    The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kathman and the Do Not Call Registry Class)**

50.    Plaintiff repeats and realleges paragraphs 1 through 45 of this Complaint and incorporates them by reference herein.

51.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

53.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

54.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c),

are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

55.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Kathman and the Internal Do Not Call Class)**

56.    Plaintiff repeats and realleges paragraphs 1 through 45 of this Complaint and incorporates them by reference herein.

57.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to

affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

58.     Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class on behalf of Defendant without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

59.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

60.     The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b)    An award of damages and costs;

c)    An order declaring that Defendants' actions, as set out above, violate the TCPA;

d)    An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)    Such further and other relief as the Court deems just and proper.

### **JURY DEMAND**

Plaintiff Kathman requests a jury trial.

Dated this 14th of December, 2022.

JEFFREY KATHMAN, individually and on behalf of all others similarly situated,


/s/ Stefan Coleman

Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman, Esq. (FL Bar no. 84382)*
KAUFMAN P.A
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com
(305) 469-5881

*Lead Counsel

*Counsel for Plaintiff and all others similarly situated*